IN THE UNITED STATES DISTRICT COURT
                    FOR THE NORTHERN DISTRICT OF ILLINOIS
                              EASTERN DIVISION

| UNITED STATES OF AMERICA, | ] |
| --- | --- |
| | ] |
| Plaintiff, | ] |
| | ]   Case No. 18 CR 496 |
| v. | ] |
| | ]   Honorable Virginia M. Kendall, |
| FELICIA BRINSON, | ]   Judge presiding. |
| | ] |
| Defendant. | ] |

## DEFENDANT'S MOTION TO SUPPRESS STATEMENTS

COMES NOW the Defendant, Felicia Brinson, by and through her attorney, Gerardo S. Gutierrez, Esq., and moves this Honorable Court for an order suppressing her post-arrest statements, and in support thereof states the following:

1. On August 13, 2018, Defendant Felicia Brinson was arrested and charged by way of a Complaint with one count of possession with intent to distribute 28 grams or more of a controlled substance believed to be crack cocaine, in violation of 21 U.S.C. § 841(a)(1). [Doc # 1]

2. Without counsel present, defendant Brinson made certain statements to law enforcement officers, which have the tendency to incriminate her.

3. Specifically, while conducting a search warrant for evidence of a robbery of an ATM machine whose funds were the property of a federally insured bank, and whom authorities suspected her then live-in boyfriend, Ivan Parker, was the responsible party, they found an amount of "crack" cocaine, together with a .25 caliber handgun at or near the location where the drugs were found in a laundry hamper.

4. Ms. Brinson was alone at her home at the time. She was also in a state of intoxication or drug induced regression when police began asking her questions aimed at soliciting incriminating responses from the defendant.

5. Ms. Brinson, in her drug-induced state gave a variety of explanations regarding her "friend," the drugs found there and the .25 caliber firearm located near the drugs.

6. Not surprisingly, Ms. Brinson gave a variety of incoherent declarations and contradicting information regarding her knowledge of these items.

7. Ms. Brinson's was placed under arrest and relocated to an FBI/Law Enforcement interrogation room, where she was presumably read her rights, and her uncounseled questioning continued.

8. A video of that questioning was played at her detention hearing for other reasons, but the Court was able to watch and listen to her conflicting answers, that although tended to further incriminate her, also clearly showed that Ms. Brinson was not in her right frame of mind.

9. Her defense submits that given her then state of mind, these experienced law enforcement officers should have known not to continue questioning her, but allowed for a period of time whereby the influence of drugs could have run through her system and a more cogent answer to questions could have been given, especially her understanding that she was free to remain silent and to request a lawyer be appointed.

10. Only then can we be sure that her inconsistent answers that tend to incriminate her were made freely, knowingly and voluntarily.

11. Nothing in the videotape suggests that any consideration was made regarding her then state of mind.

12. A seizure occurs when, "in view of all of the circumstances surrounding the incident," a person reasonably believes that she is not "free to leave." United States v. Mendehall, 446 U.S. 544, 554 (1980). Whether a person has been seized rests on an objective standard of police conduct, not on how the officers subsequently characterize their actions. Davis v. Mississippi, 394 U.S. 721, 726-27 (1969)(string citation omitted). Even "an initially consensual encounter . . . can be transformed into a seizure or detention within the meaning of the Fourth Amendment." Kaupp v. Texas, 538 U.S. 626, 632 (2003) (citation omitted).

13. Ms. Brinson was seized and in custody when she was interrogated. She was taken to the FBI Offices, locked in an interrogation room for over two hours, and never told that she was free to go. Agents questioned Ms. Brinson in an inherently coercive setting, which by its very nature "intrude[d] so severely on interests protected by the Fourth Amendment as necessarily to trigger the traditional safeguards against illegal arrest." Dunaway v. New York, 442 U.S. 200, 216 (1979); see also United States v. Sharpe, 470 U.S. 675, 691 (1985) (Marshall, J., concurring) (string citation omitted).

14. The Fourth Amendment prohibits the seizure of an individual absent probable cause. Probable cause requires that a police officer have reasonable grounds for a belief that an individual is guilty of a crime. That belief must be particular to the individual detained. Maryland v. Pringle, 540 U.S. 366, 373 (2003). In determining whether there is probable cause, a court must look at the historical facts leading up to a seizure and determine whether an objectively reasonable police officer would believe he had probable cause to detain the individual in question. Id.

15. The facts of this case clearly demonstrate that the police lacked probable cause to detain Ms. Brinson. No physical evidence linked her to the crime being investigated in their warrant. No witnesses suggested that Ms. Brinson was at or near the ATM on the date of the robbery. These "historical facts" suggest that any suspicions the police may have had about Ivan Parker and her connection to the crime were ill-founded at best. No objectively reasonable officer could have believed, on the strength of the evidence available at the time of Ms. Brinson's interrogation, that Ms. Brinson was guilty of either the ATM robbery, illegal drug distribution or weapons offense. Any seizure of a person made without probable cause violates her constitutional rights, and any statement that flows from that seizure is inadmissible at trial.

Dunaway, 442 U.S. at 216-19; see also Wong Sun v. United States, 371 U.S. 471, 488 (1963).

16. When an individual is questioned by police and not given the Miranda warning, "a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived [her] privilege against self-incrimination and [her] right to retained or appointed counsel." Miranda v. Arizona, 384 U.S. 436, 475 (1966) (citation omitted).

17. Ms. Brinson gave two statements to law enforcement officers. The first statement is clearly inadmissible because Ms. Brinson was not informed of her Miranda rights prior to making it. Ms. Brinson was not informed of her right to remain silent when she was initially contacted by these Officers, nor when she was placed in the back of a police car. The officers did not inform Ms. Brinson of her rights upon first locking her in an interrogation room at the FBI offices. Given that Ms. Brinson was under the heavy influence of narcotics (as visible from her interview tape) and having difficulty thinking straight, the government clearly cannot satisfy the "heavy burden" of showing that Ms. Brinson waived her rights. Miranda, 384 U.S. at 475.

18. It is clear that Ms. Brinson was not "adequately and effectively apprised of her rights" as mandated by Miranda, 384 U.S. at 467, and

any statements made following the ineffective warning given by the FBI must be suppressed.

19. If a suspect is interrogated in the absence of an attorney, the government must affirmatively prove not only that the waiver was voluntary, but also that it constituted "a knowing and intelligent relinquishment or abandonment of a known right or privilege." Edwards v. Arizona, 451 U.S. 477, 482 (1981) (citing, Johnson v. Zerbst, 304 U.S. 458, 464 (1938)).

20. The voluntariness analysis focuses on the coercive actions of the [Law Enforcement] and the mental condition of the defendant, Colorado v. Connelly, 479 U.S. 157, 164 (1986), to determine whether the defendant's will was "overborne" by the environment in which [she] was questioned and the interrogator's actions. Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973). Characteristics of the accused, such as her age, education, and intelligence, also must be taken into account. Id. In order to be "knowing and intelligent," a waiver must have been "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." Moran v. Burbine, 475 U.S. 412, 421 (1986). This analysis likewise depends "upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the

accused." Edwards, 451 U.S. at 482.

21. The totality of the circumstances demonstrates that Ms. Brinson did not voluntarily waive her Fifth Amendment rights: her inebriated and/or drug induced exhausted mental state; Ms. Brinson's impaired intellectual functioning; and the absence or inadequacy of Miranda warnings. Greenwald v. Wisconsin, 390 U.S. 519, 521 (1968). The coercive nature of the custodial interrogation by threatening to incarcerate her if she did not cooperate. In addition, Ms. Brinson was detained for several hours during which she was not allowed to use the bathroom, eat, drink, or contact counsel, friends, or family. These facts demonstrate that Ms. Brinson did not voluntarily waive her Miranda rights. See, also, Mincey v. Arizona, 437 U.S. 385, 401-02 (1978).

22. Miranda warnings given after a suspect has made an unwarned statement do not sufficiently "advise the suspect that [she] had a real choice about giving an admissible statement at that juncture." Misourri v. Seibert, 542 U.S. 600, 612 (2004). This is particularly true where "the two-step interrogation technique was used in a calculated way to undermine the Miranda warning." Id. at 622 (Kennedy, J., concurring). Successive interrogation tactics wrongfully suggest to an individual that the mere repetition of earlier statements would have no potentially incriminating effect. Id. at 620; Darwin v. Connecticut, 391

U.S. 346, 350-51 (1968)(Harlan, J., concurring). When <u>Miranda</u> warnings are given only after a suspect has already volunteered information to the police, "the warnings will be ineffective in preparing the suspect for successive interrogation, close in time and similar in content." <u>Seibert</u>, at 613 (plurality opinion). Thus, the impermissible earlier statement taints and renders inadmissible the subsequent statement. <u>See</u>, <u>Ex parte Callahan</u>, 471 So. 2d 463 (Ala. 1985).

23. Whether preceded by <u>Miranda</u> warnings or not, statements that are coerced or given involuntarily violate due process and cannot be used at trial for any purpose. <u>New Jersey v. Portash</u>, 440 U.S. 450, 459 (1979). The appropriate test for the voluntariness of a statement is whether a defendant's will was overborne by the totality of the circumstances. It requires an examination of the characteristics of the accused and the interrogation itself. <u>Dickerson v. United States</u>, 530 U.S. 428, 434 (2000). Only statements that are "free from inducement, threat or promise, either expressed or implied, that would have produced in the mind of the accused any fear of harm or hope of favor" can be considered voluntary. <u>Ex parte Jackson</u>, 836 So. 2d 979, 982-83 (Ala. 2002).

24. Under the totality of the circumstances, it is clear that Ms. Brinson's statements were involuntary. Any statements that are the result of

coercive action by law enforcement officers that overwhelms the will of the accused are involuntary, Schneckloth, 412 U.S. at 225, and inadmissible for any purpose, Mincey, 437 U.S. at 398; Portash, 440 U.S. at 459-60. For this reason, Ms. Brinson's statements must be excluded in their entirety.

WHEREFORE the reasons stated above, the defendant, through her counsel, pray this Honorable Court grant her motion to suppress her post-arrest statements in their entirety.

Respectfully submitted,

/S/ Gerardo S. Gutierrez, Esq.

GERARDO S. GUTIERREZ, ESQ.
Attorney for the Defendant
53 W. Jackson Blvd., Ste. 1651
Chicago, IL 60604
312-786-9970