AUSA Tobara S. Richardson, (312) 469-6305

RECEIVED

AUG 10 2018

MAGISTRATE JUDGE MARIA VALDEZ
UNITED STATES DISTRICT COURT

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

**UNDER SEAL**

In the Matter of the Search of:

The apartment located at 4244 West Cermak, Unit 2ER, Chicago, Illinois, further described in Attachment A

Case Number:

18M526

# APPLICATION AND AFFIDAVIT FOR A SEARCH WARRANT

I, Dustin T. Gourley, a Special Agent of the Federal Bureau of Investigation, request a search warrant and state under penalty of perjury that I have reason to believe that on the following property or premises:

### See Attachment A

located in the Northern District of Illinois, there is now concealed:

### See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is evidence, instrumentalities, and fruits.

The search is related to a violation of:

| Code Section | Offense Description |
| --- | --- |
| Title 18, United States Code, Section 1951(a) | interference with commerce by robbery |

The application is based on these facts:

### See Attached Affidavit,

Continued on the attached sheet.

_____
*Applicant's Signature*

DUSTIN T. GOURLEY, Special Agent, Federal Bureau of Investigation
_____
*Printed name and title*

Sworn to before me and signed in my presence.

Date: August 10, 2018 _____

_____
*Judge's signature*

City and State: Chicago, Illinois _____

MARIA VALDEZ, U.S. Magistrate Judge
*Printed name and title*

UNITED STATES DISTRICT COURT    )
                                         )

NORTHERN DISTRICT OF ILLINOIS    )

## **AFFIDAVIT**

I, Dustin T. Gourley, being duly sworn, state as follows:

1.     I am a Special Agent with the Federal Bureau of Investigation. I have been so employed since approximately 2012. As part of my duties as an FBI Special Agent, I investigate criminal violations relating to violent crimes, including, among others, kidnaping, bank robbery, armed robberies of commercial institutions, and the apprehension of violent fugitives. I have participated in the execution of multiple federal search warrants.

2.     This affidavit is made in support of an application for a warrant to search the apartment located at 4244 West Cermak, Unit 2ER, Chicago, Illinois, described further in Attachment A (the **"Subject Premises"**), for evidence, instrumentalities, and fruits described further in Attachment B, concerning the offense of interference with commerce by robbery, in violation of Title 18, United States Code, Section 1951(a) (**"Subject Offense"**).

3.     The statements in this affidavit are based on my personal knowledge, and on information I have received from other law enforcement personnel and from persons with knowledge regarding relevant facts. Because this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth facts that I believe are sufficient to establish probable cause to believe that evidence, instrumentalities, and

fruits of violations of Title 18, United States Code, Section 1951(a), are located at 4244 West Cermak, Unit 2ER, Chicago, Illinois.

## I.    FACTS SUPPORTING PROBABLE CAUSE TO SEARCH

4.    On July 27, 2018, at approximately 6:59 a.m., an armed guard/ATM technician employed by Loomis Armored U.S. ("Victim A") was robbed at gunpoint by an unknown black male while servicing a Chase Bank, located at 3856 West 26th Street, Chicago, Illinois.

5.    The FBI interviewed Victim A, who has been employed by Loomis for approximately 21 years. On July 27, 2018, Victim A began work at approximately 5:20 a.m., which entailed picking up the armored vehicle in Burr Ridge, Illinois, along with his driver. Victim A advised that the first stop of the day was to service Chase Bank located at 3856 West 26th Street, Chicago, Illinois. Victim A added that the Chase Bank location had been serviced three times that week already, and July 27, 2018 would be the fourth time.

6.    Victim A recalled arriving at the Chase Bank at approximately 6:50 a.m., when he exited the armored vehicle and approached the vestibule within the Chase Bank where the ATM was located. Victim A explained that the Chase Bank was still closed, but access to the vestibule could be gained by scanning a credit/debit card.

7.    Victim A gained access to the vestibule and viewed multiple customers inside the vestibule. Victim A recalled that one of the customers was a black male, approximately mid to late 20s/early 30s, approximately 6'0 - 6'2, thin build, wearing a

black baseball hat, black sunglasses, black jacket, black or camouflage pants, no gloves, and black gym shoes ("Unknown Subject" or "UNSUB"). Victim A recalled that the UNSUB was at an ATM machine, which was located on the south side of the vestibule. Victim A explained that the UNSUB was utilizing a card within the ATM, but a noise could be heard which seemed as though an error was occurring.

8.     Victim A began servicing a machine, which was located on the northwest side of the vestibule. Victim A began balancing the ATM on the northwest side, changing/swapping the money, and entering the information into his work PDA. As part of his work, Victim A had with him a black bag that contained United States Currency. Victim A explained that the UNSUB began letting other customers use the south side ATM. Victim A opined that when it was only Victim A and the UNSUB inside the vestibule, the UNSUB appeared to leave but instead approached Victim A. Victim A recalled the UNSUB stated something to the effect of "I don't want to hurt you, but," while pointing a black/dark blue handgun to Victim A's head. Victim A added that the gun was in the UNSUB's right hand. Victim A recalled attempting to push the gun away, and a physical struggle ensued. Victim A explained that the UNSUB then utilized his left hand to pepper spray Victim A. Victim A stated that the UNSUB then grabbed the black bag containing United States Currency and departed the vestibule.

9.     Victim A recalled the UNSUB running north bound on Springfield, then west bound in an alley. Victim A explained that he departed the vestibule to pursue the UNSUB, and unholstered his weapon. Victim A advised that he accidently pulled

3

the trigger and discharged one round, which struck multiple vehicles. Victim A stated that he stopped pursing the UNSUB approximately 10 yards short of the alley.

10.     The FBI seized receipts found within the vestibule which appeared to indicate that the loss from the **Subject Offense** was approximately $106,335.

11.     Chase Bank has surveillance cameras that captured the **Subject Offense** in the vestibule. Chase Bank provided to the FBI still images from the surveillance video. The still images appeared to be consistent with the information provided by Victim A. The still images showed the UNSUB inside the Chase Bank vestibule prior to Victim A arriving. Victim A is observed entering the Chase Bank vestibule with what appeared to be a black bag of currency. While in the Chase Bank vestibule, the UNSUB appears to use his cellular phone. At approximately 6:58 a.m., the UNSUB is observed approaching Victim A with what appears to be a firearm in his right hand. After a brief physical struggle between the UNSUB and Victim A, the UNSUB departs with the black bag. The photographs include:

## Digital Video Snapshot

Site: JPMorgan Chase/IL/Chicago/IL Little Village 3856 West 26th St
Camera Name: 7.1 ATM Vestibule #2
7/27/2018 6:57:19 AM (Central Daylight Time)



Capture Size: 352 x 240 pixels
Device Network Name: MNAR1519V296
Device Serial Number: AR1519V296
Device Station ID: 481

5

**Digital Video Snapshot**

Site: JPMorgan Chase/IL/Chicago/IL Little Village 3959 West 26th St
Camera Name: 5.1 ATM Transaction #1
3/21/2018 8:59:12 AM (Central Daylight Time)



Capture Size: 704 x 480 pixels
Device Network Name: MNVR15DV206
Device Serial Number: A31515DV206
Device Station ID: 491

**Digital Video Snapshot**

Site: JPMorgan Chase/IL/Chicago/IL Little Village 3959 West 26th St
Camera Name: 6.4 ATM Headbub #1
3/21/2018 8:59:16 AM (Central Daylight Time)



Capture Size: 704 x 480 pixels
Device Network Name: MNVR15DV206
Device Serial Number: A31515DV206
Device Station ID: 491



12.     The FBI received surveillance video from the Loomis armored vehicle, which appeared to depict the UNSUB arriving in the area of the Chase Bank at approximately 6:49 a.m., and gaining access into the Chase Bank vestibule. At approximately 6:50, Victim A is observed entering the vestibule carrying a large black bag. At approximately 7:00 a.m., the UNSUB is depicted running away from the area of the armored vehicle while carrying a large black bag. The UNSUB is observed traveling north bound on Springfield Avenue, and then westbound in the alley. Still images from the surveillance video included the following:







8



13.     The FBI obtained surveillance footage from Business A, located on West 26th Street, Chicago, Illinois. The surveillance footage depicted the UNSUB arriving to the area by walking eastbound in the alley that paralleled 26th Street, directly west of Springfield, and departing the area after the **Subject Offense** using the same route. Still images of the surveillance footage included the following:[1]

---

[1] The time stamp on this surveillance footage appears to be off by approximately 17 hours and 33 minutes.



14.     The FBI obtained surveillance footage from Business B, located on West

26th Street, Chicago, Illinois. The surveillance footage appeared to depict the UNSUB

riding a bicycle from the east/west alley directly north of 26th Street, towards Pulaski

Avenue. The UNSUB appeared to be traveling from the alley where the UNSUB was

last observed from the surveillance footage obtained from Business A. The UNSUB

appeared to cross Pulaski Avenue onto 25th Place.

15.    The FBI obtained surveillance footage from the personal residence of Witness A, located on West 25th Place, Chicago, Illinois.[2] The footage appeared to depict the UNSUB traveling westbound on 25th Place on a bicycle, west of Pulaski Avenue. The footage depicted the UNSUB removing the black hat, and carrying the black bag. The UNSUB was observed riding the bicycle west bound on 25th Place. A still image from the footage is below:



16.    The FBI obtained surveillance footage from Witness B, the owner of the building located on South Keeler, Chicago, Illinois.[3] The surveillance footage depicted the UNSUB traveling north bound on Keeler Avenue towards Ogden Avenue. A still image from the footage appears below:

---

[2] The time stamp on this surveillance footage appeared to be off by approximately one hour.

[3] The time stamp on this surveillance footage appeared to be off by approximately 17 to 18 minutes.

11



17.    The FBI obtained surveillance footage from Business C, located on West Ogden Avenue, Chicago, Illinois. The surveillance footage appeared to depict the UNSUB traveling southwest bound on Ogden Avenue, west of Keeler Avenue.

18.    The FBI obtained surveillance footage from the residence of Witness C located on South Kildare, Chicago, Illinois.[4] The surveillance video depicted the UNSUB traveling west/southwest on Ogden Avenue before turning northbound on Kildare Avenue. The UNSUB appeared to turn left into an alley, and is observed from a separate camera angle then traveling northbound in the alley directly west of Kildare Avenue. Below is a still image from the alley directly west of Kildare Avenue:

---

[4] The time stamp on this surveillance footage appeared to be off by approximately 4 to 5 minutes.



19.     The FBI obtained surveillance footage from the personal residence of Witness D, located on West Cermak Road, Chicago, Illinois.[5] The surveillance footage depicted the UNSUB traveling northbound in the alley directly west of Kildare Avenue, north of Ogden Avenue. The UNSUB traveled by bicycle to where the alley ends, dismounted the bicycle and left the bicycle near a dumpster. The UNSUB is threw the black bag over a fence, and then jumped over the fence. The UNSUB appeared to place an object back into the black bag that had fallen out while being thrown over the fence. The UNSUB then picked up the bag and departed from view. A separate camera angle showed the UNSUB exit the north side of the courtyard with the black bag, and he then departed from view. Still images from the footage are as follows:

---

[5] The time stamp on this surveillance footage appeared to be off by approximately one hour and 12 minutes.







20.　　The FBI obtained surveillance footage from Witness E, located on West Cermak Road, Chicago, Illinois.[6] The surveillance footage appeared to depict the

---

[6] The time stamp on this surveillance footage appeared to be off by approximately one hour.

UNSUB walking towards an apartment building, wearing jeans, a white undershirt, black jacket, and carrying a black object in his left hand. The surveillance footage appeared to depict the UNSUB entering into an apartment building on West Cermak Road, Chicago, Illinois at approximately 7:17 a.m. The address on the door the UNSUB entered was 4246 West Cermak, Chicago, Illinois. A still image from the footage is below:



### Identification of IVAN PARKER

21.     The FBI interviewed Witness F, who owns the building where the **Subject Premises** is located. Witness F stated that the exterior door to 4246 West Cermak provides access to the entire building, which includes the apartments located at 4244 – 4250 West Cermak Road. The FBI showed Witness F a still image of the UNSUB from the video received from Witness D, and Witness F stated that the

UNSUB resembled IVAN PARKER. Witness F had seen PARKER with Individual A when they agreed to rent the apartment. Witness F also had a picture of PARKER's state identification. Witness F further stated that IVAN PARKER lives at the **Subject Premises**, 4244 West Cermak, Unit 2ER, Chicago, Illinois, with Individual A. Witness F provided the current telephone number for PARKER as XXX-XXX-2388.

22.     A search of law enforcement databases revealed XXX-XXX-2388 was associated with a utility service to IVAN PARKER at the **Subject Premises**.

23.     I have viewed PARKER's booking photographs and state identification card, and PARKER matches the general physical attributes of the UNSUB.

24.     The FBI obtained a criminal history report for PARKER, which revealed that PARKER has multiple convictions, including but not limited to, Felon Possession/Use of a Firearm, Aggravated Battery with a Firearm, Aggravated Assault with a Gun/Knife/Dangerous Weapons, and Manufacture/Delivery of Cocaine.

25.     PARKER was most recently arrested on June 16, 2017, by the Forest Park Police Department for Criminal Trespass of a Vehicle. Booking photographs of PARKER taken as part of that arrest show a tattoo on his right neck area. The location of the tattoo is consistent with the location of the UNSUB's neck that was concealed with an unknown white object during the **Subject Offense**. Below is a comparison of the still image from the Chase Bank surveillance footage of the UNSUB, with the booking photograph of PARKER:

 

**Photo Array with Victim A**

26.    On August 8, 2018, a sequential photographic line-up was conducted with Victim A. Victim A identified the photograph that depicted PARKER, but he was not 100% sure.

**Interstate Commerce**

27.    As a result of the **Subject Offense**, the assets of Loomis Armored U.S. were reduced. Loomis Armored U.S. is a business that engages in commerce both inside and outside of the State of Illinois.

## II.    SPECIFICS REGARDING SEARCHES OF ELECTRONIC STORAGE MEDIA

28.    Based upon my training and experience, and the training and experience of specially trained personnel whom I have consulted, searches of evidence from electronic storage media commonly require agents to download or copy information from the electronic storage media and their components, or remove most or all

electronic storage media items (*e.g.* computer hardware, computer software, computer-related documentation, and cellular telephones) to be processed later by a qualified computer expert in a laboratory or other controlled environment. This is almost always true because of the following:

a. Electronic storage media can store the equivalent of thousands of pages of information. Especially when the user wants to conceal criminal evidence, he or she often stores it with deceptive file names. This requires searching authorities to examine all the stored data to determine whether it is included in the warrant. This sorting process can take days or weeks, depending on the volume of data stored, and it would be generally impossible to accomplish this kind of data search on site.

b. Searching electronic storage media for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment. The vast array of computer hardware and software available requires even computer experts to specialize in some systems and applications, so it is difficult to know before a search which expert should analyze the system and its data. The search of an electronic storage media system is an exacting scientific procedure which is designed to protect the integrity of the evidence and to recover even hidden, erased, compressed, password-protected, or encrypted files. Since electronic storage media evidence is extremely vulnerable to tampering or destruction (which may be caused by malicious code or normal activities of an operating system), the controlled environment of a laboratory is essential to its complete and accurate analysis.

29.     In order to fully retrieve data from a computer system, the analyst needs all storage media as well as the computer. The analyst needs all the system software (operating systems or interfaces, and hardware drivers) and any applications software which may have been used to create the data (whether stored on hard disk drives or on external media).

30.     In addition, electronic storage media such as a computer, its storage devices, peripherals, and Internet connection interface may be instrumentalities of the crime(s) and are subject to seizure as such if they contain contraband or were used to carry out criminal activity.

## III.     PROCEDURES TO BE FOLLOWED IN SEARCHING ELECTRONIC STORAGE MEDIA

31.     Pursuant to Rule 41(e)(2)(B) of the Federal Rules of Criminal Procedure, this warrant will authorize the removal of electronic storage media and copying of electronically stored information found in the premises described in Attachment A so that they may be reviewed in a secure environment for information consistent with the warrant. That review shall be conducted pursuant to the following protocol.

32.     The review of electronically stored information and electronic storage media removed from the premises described in Attachment A may include the following techniques (the following is a non-exclusive list, and the government may use other procedures that, like those listed below, minimize the review of information not within the list of items to be seized as set forth herein):

a.  examination of all the data contained in such computer hardware, computer software, and/or memory storage devices to determine whether that data falls within the items to be seized as set forth in Attachment B;

b.  searching for and attempting to recover any deleted, hidden, or encrypted data to determine whether that data falls within the list of items to be seized as set forth in Attachment B (any data that is encrypted and unreadable will not be returned unless law enforcement personnel have determined that the data is not (1) an instrumentality of the offenses, (2) a fruit of the criminal activity, (3) contraband, (4) otherwise unlawfully possessed, or (5) evidence of the offenses specified above);

c.  surveying file directories and the individual files they contain to determine whether they include data falling within the list of items to be seized as set forth in Attachment B;

d.  opening or reading portions of files, and performing key word searches of files, in order to determine whether their contents fall within the items to be seized as set forth in Attachment B.

33.  The government will return any electronic storage media removed from the premises described in Attachment A within 30 days of the removal unless, pursuant to Rule 41(c)(2) or (3) of the Federal Rules of Criminal Procedure, the removed electronic storage media contains contraband or constitutes an instrumentality of crime, or unless otherwise ordered by the Court.

## IV.    CONCLUSION

34.    Based on the above information, I respectfully submit that there is probable cause to believe that interference with commerce by robbery, in violation of Title 18, United States Code, Section 1951(a), has been committed, and that evidence, instrumentalities, and fruits relating to this criminal conduct, as further described in Attachment B, will be found in the **Subject Premises**, as further described in Attachment A. I therefore respectfully request that this Court issue a search warrant for the apartment located at 4244 West Cermak, Unit 2ER, Chicago, Illinois, more particularly described in Attachment A, authorizing the seizure of the items described in Attachment B.

FURTHER AFFIANT SAYETH NOT.


_____
Dustin T. Gourley
Special Agent
Federal Bureau of Investigation


Subscribed and sworn
before me this 10th day of August, 2018

_____
Honorable MARIA VALDEZ
United States Magistrate Judge

<u>**ATTACHMENT A**</u>

**DESCRIPTION OF PREMISES TO BE SEARCHED**

The **Subject Premises** is located at 4244 West Cermak, Apartment 2ER, Chicago, Illinois, 60623. The **Subject Premises** is a multi-unit apartment building with four entrance doors on the south side of the building, which is located on the north side of Cermak Avenue. A photograph of the apartment building, where the **Subject Premises** is located, is as follows:



**ATTACHMENT B**

**LIST OF ITEMS TO BE SEIZED**

Evidence, instrumentalities, and fruits concerning the violation of Title 18, United States Code, Section 1951(a), as follows:

1.    Any articles of clothing, shoes, or accessories that resemble those worn by the Unknown Subject or "UNSUB," as depicted in Chase Bank and Loomis surveillance videos of the **Subject Offense** on July 27, 2018, to include, but is not limited to, black shoes, jeans, belt, a white V-neck t-shirt, black jacket, and black hat.

2.    United States currency.

3.    Firearms, firearm magazines, ammunition and other firearm related items.

4.    Any items associated with pepper spray.

5.    Bandages similar to the one worn by the UNSUB during the **Subject Offense**.

6.    Black bags similar to the Loomis Armored bag taken during the **Subject Offense**.

7.    Bank account numbers, bank related material and documents, or other banking information.

8.    Financial transactions, to include receipts or other evidence reflecting purchases, on or after July 27, 2018.

9. Records, notebooks, correspondence, memoranda, receipts, and/or photographs relating to the robbery on July 27, 2018, and proceeds from that robbery.

10. Photographs, maps, or drawings of the area in or around the location of the bank where the robbery occurred or other banks.

11. Cellular telephones, or documentation of cellular telephone numbers associated with IVAN PARKER.

12. Any and all records identifying any social media accounts associated with IVAN PARKER.

13. Address and/or telephone books, Rolodex indices, and any papers reflecting names, addresses, telephone numbers, facsimile numbers, and e-mail addresses of individuals who associate with IVAN PARKER.

14. Bills, receipts, invoices, or other documentation to that establishes residency for IVAN PARKER at the **Subject Premises** or elsewhere.

15. Any of the items described in the above paragraphs maintained in cellular phones and other communication devices, safes, desks, cabinets, filing cabinets, or hidden compartments on the **Subject Premises**.

## ADDENDUM TO ATTACHMENT B

Pursuant to Rule 41(e)(2)(B) of the Federal Rules of Criminal Procedure, this warrant authorizes the removal of electronic storage media and copying of electronically stored information found in the premises described in Attachment A so that they may be reviewed in a secure environment for information consistent with the warrant. That review shall be conducted pursuant to the following protocol:

The review of electronically stored information and electronic storage media removed from the premises described in Attachment A may include the following techniques (the following is a non-exclusive list, and the government may use other procedures that, like those listed below, minimize the review of information not within the list of items to be seized as set forth herein):

a.    examination of all the data contained in such computer hardware, computer software, and/or memory storage devices to determine whether that data falls within the items to be seized as set forth in Attachment B;

b.    searching for and attempting to recover any deleted, hidden, or encrypted data to determine whether that data falls within the list of items to be seized as set forth in Attachment B (any data that is encrypted and unreadable will not be returned unless law enforcement personnel have determined that the data is not (1) an instrumentality of the offenses, (2) a fruit of the criminal activity, (3) contraband, (4) otherwise unlawfully possessed, or (5) evidence of the offenses specified above);

c.    surveying file directories and the individual files they contain to determine whether they include data falling within the list of items to be seized as set forth in Attachment B; and

d.    opening or reading portions of files, and performing key word searches of files, in order to determine whether their contents fall within the items to be seized as set forth in Attachment B.

The government will return any electronic storage media removed from the premises described in Attachment A within 30 days of the removal unless, pursuant to Rule 41(c)(2) or (3) of the Federal Rules of Criminal Procedure, the removed electronic storage media contains contraband or constitutes an instrumentality of crime, or unless otherwise ordered by the Court.

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

### UNDER SEAL

In the Matter of the Search of:

The apartment located at 4244 West Cermak, Unit 2ER, Chicago, Illinois, further described in Attachment A

Case Number:

**18M526**

## SEARCH AND SEIZURE WARRANT

To: Dustin T. Gourley and any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the Northern District of Illinois:

### See Attachment A

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal:

### See Attachment B

**YOU ARE HEREBY COMMANDED** to execute this warrant on or before <u>August 24, 2018</u> in the daytime (6:00 a.m. to 10:00 p.m.).

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to the issuing United States Magistrate Judge.

*Maria Valdez*

Date and time issued: <u>August 10, 2018</u>   *2:50 pm*

_____
*Judge's signature*

City and State: <u>Chicago, Illinois</u>

<u>MARIA VALDEZ, U.S. Magistrate Judge</u>
*Printed name and title*

**ATTACHMENT A**

**DESCRIPTION OF PREMISES TO BE SEARCHED**

The **Subject Premises** is located at 4244 West Cermak, Apartment 2ER, Chicago, Illinois, 60623. The **Subject Premises** is a multi-unit apartment building with four entrance doors on the south side of the building, which is located on the north side of Cermak Avenue. A photograph of the apartment building, where the **Subject Premises** is located, is as follows:



## ATTACHMENT B

## LIST OF ITEMS TO BE SEIZED

Evidence, instrumentalities, and fruits concerning the violation of Title 18, United States Code, Section 1951(a), as follows:

1.    Any articles of clothing, shoes, or accessories that resemble those worn by the Unknown Subject or "UNSUB," as depicted in Chase Bank and Loomis surveillance videos of the **Subject Offense** on July 27, 2018, to include, but is not limited to, black shoes, jeans, belt, a white V-neck t-shirt, black jacket, and black hat.

2.    United States currency.

3.    Firearms, firearm magazines, ammunition and other firearm related items.

4.    Any items associated with pepper spray.

5.    Bandages similar to the one worn by the UNSUB during the **Subject Offense**.

6.    Black bags similar to the Loomis Armored bag taken during the **Subject Offense**.

7.    Bank account numbers, bank related material and documents, or other banking information.

8.    Financial transactions, to include receipts or other evidence reflecting purchases, on or after July 27, 2018.

9. Records, notebooks, correspondence, memoranda, receipts, and/or photographs relating to the robbery on July 27, 2018, and proceeds from that robbery.

10. Photographs, maps, or drawings of the area in or around the location of the bank where the robbery occurred or other banks.

11. Cellular telephones, or documentation of cellular telephone numbers associated with IVAN PARKER.

12. Any and all records identifying any social media accounts associated with IVAN PARKER.

13. Address and/or telephone books, Rolodex indices, and any papers reflecting names, addresses, telephone numbers, facsimile numbers, and e-mail addresses of individuals who associate with IVAN PARKER.

14. Bills, receipts, invoices, or other documentation to that establishes residency for IVAN PARKER at the **Subject Premises** or elsewhere.

15. Any of the items described in the above paragraphs maintained in cellular phones and other communication devices, safes, desks, cabinets, filing cabinets, or hidden compartments on the **Subject Premises**.

## ADDENDUM TO ATTACHMENT B

Pursuant to Rule 41(e)(2)(B) of the Federal Rules of Criminal Procedure, this warrant authorizes the removal of electronic storage media and copying of electronically stored information found in the premises described in Attachment A so that they may be reviewed in a secure environment for information consistent with the warrant. That review shall be conducted pursuant to the following protocol:

The review of electronically stored information and electronic storage media removed from the premises described in Attachment A may include the following techniques (the following is a non-exclusive list, and the government may use other procedures that, like those listed below, minimize the review of information not within the list of items to be seized as set forth herein):

a. examination of all the data contained in such computer hardware, computer software, and/or memory storage devices to determine whether that data falls within the items to be seized as set forth in Attachment B;

b. searching for and attempting to recover any deleted, hidden, or encrypted data to determine whether that data falls within the list of items to be seized as set forth in Attachment B (any data that is encrypted and unreadable will not be returned unless law enforcement personnel have determined that the data is not (1) an instrumentality of the offenses, (2) a fruit of the criminal activity, (3) contraband, (4) otherwise unlawfully possessed, or (5) evidence of the offenses specified above);

c. surveying file directories and the individual files they contain to determine whether they include data falling within the list of items to be seized as set forth in Attachment B; and

d. opening or reading portions of files, and performing key word searches of files, in order to determine whether their contents fall within the items to be seized as set forth in Attachment B.

The government will return any electronic storage media removed from the premises described in Attachment A within 30 days of the removal unless, pursuant to Rule 41(c)(2) or (3) of the Federal Rules of Criminal Procedure, the removed electronic storage media contains contraband or constitutes an instrumentality of crime, or unless otherwise ordered by the Court.