IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ] | |
| ] | |
| Plaintiff, ] | |
| ] | Case No. 18 CR 496 |
| v. ] | |
| ] | Honorable Virginia M. Kendall, |
| FELICIA BRINSON, ] | Judge presiding. |
| ] | |
| Defendant. ] | |

**DEFENDANT'S REPLY TO GOVERNMENT'S RESPONSE TO HER
MOTION TO SUPPRESS STATEMENTS**

COMES NOW the Defendant, Felicia Brinson, by and through her attorney, Gerardo S. Gutierrez, Esq., and replies to the government's response to her motion to suppress statements and her arrest, and in support thereof states the following:

The government has laid out its arguments for allowing all of Defendant's statements to come in. However, telling in their response is this statement early in their analysis, otherwise known as a *Seibert* Confession. *Missouri v. Seibert*, 542 U.S. 600 (2004).

> "During the interview, as specific items were recovered, defendant was asked about the specific items by the various agents who recovered the specific item(s)."

The Problem with this statement is that just as law enforcement officers ("LEO"s) had asked preliminary questions after her so called "informed consent" was given to answer specific questions, to wit: who, what, where, when? (Step One or *Terry* type questions) – But then, evidence of a new crime surfaced

during the search; i.e., found items by various agents who recovered specific items, dealer-quantity narcotics plus a .25 caliber firearm. (Step Two, the *un-Mirandized* second step) This second step of the interrogation, turned the execution of the search warrant investigation from a mine-run, non-custodial *Terry* type questioning, to "a very importan[t]" and "serious nature[d]" questioning in a full custodial and continuous interrogation, where certain procedural rights and constitutional guarantees accrue. [See Gov't. Rsp at 5]

Based upon this apparent drip-drip of evidence discovered during the execution of the robbery search warrant, LEO's at this point had a legal obligation to stop the preliminary (Step One) questioning and *Mirandize* Ms. Brinson, as she reasonably believed she was no longer free to leave.

Here it is the government's burden of persuasion to prove by a preponderance of the evidence, the voluntariness of the challenged statements. *Missouri v. Seibert*, 542 U.S. 600 (2004). The government would be on much more solid *Seibert* footing had they provided her with the mandated *Miranda* warnings, not some 5:25 p.m. reminder of the "very importance," and "serious nature" of remaining truthful. The discovery of these items during the execution of a search for proceeds of stolen cash in a one-bedroom apartment, which Felicia Brinson shares with robbery suspect, Ivan Parker. (Indicted separately, but not charged with this offense and who LEOs had earlier in the day observed coming and going and did nothing to detain or question him – until he returned to a different apartment within the building.)

2

Aside from arguments that it was obvious from the videotapes Ms. Brinson was not in her right frame of mind when LEOs first began questioning her, and thus her ability to understand her interrogator's warnings, the alternative argument is that when evidence of another unrelated crime was discovered, LEOs failed to read her the pocket sized *Miranda* warnings they carry on their person, since at that moment it would have been clear to anyone that she was not legally free to go. *Seibert* changed the interrogation tactic of the two-step confession, where questions elicited begin as un-Mirandized preliminary, non-custodial questions that continue in hopes of soliciting investigatory information, then turning to questioning about specific crimes aimed at obtaining a full confession, only to be repeated later for a full *Mirandized* confession. *Seibert* makes it clear that this dance is impermissible.

In *United States v. Hernandez*, Slip Op 13–2879 (7th Cir, 5/07/14) (denied on other grounds), the defendant sought to suppress his post Miranda confession on the ground that it was a product of having confessed during a pre-Miranda interrogation two-step interrogation. The district court carefully considered the Supreme Court's rulings in Oregon v. Elstad, 470 U.S. 298 (1985) and *Missouri v. Seibert*, 542 U.S. 600 (2004) and found an impermissible two-step interrogation approach specifically prohibited by *Seibert*. The Seventh Circuit, reversed and denied the motion, finding that only a single instance of a pre-warning question confession had occurred, calling the first-step imprecise. Said the Court:

> [T]he question asked of Hernandez while he was in custody is one which—absent certain circumstances—would require Miranda warnings,

3

> but they were not given until after it was asked. However, as we later conclude, certain circumstances were present.
>
> . . . .
>
> And, similarly, such questions are far less likely to have been part of the 'deliberate use of a two-step interrogation strategy' to circumvent *Miranda*.

*Hernandez*, at *5 (internal quotations omitted), distinguishing, *Stewart,* 388 F.3d at 1090. Nonetheless, *Hernandez* is distinguishable as here it is clear Felicia Brinson is asked basic, non-custodial questions, followed by a trickling of questions as various agents find new evidence of a separate crime. At this point, the Supreme Court tells us that the informal interview should have stopped before she was allowed to answer the more incriminating questions aimed at obtaining a pre-Miranda informal confession, only to be followed by formal *Miranda* warnings later at the FBI offices when she is essentially asked to repeat her statements. See, *Seibert*, 542 U.S. 600.[1] This case is much easier to decide than *Hernandez's* "one-question" carve-out exception.

In challenging the concept of two-step pre-Mirandize preclusion, the government raises the Seventh Circuit post *Seibert* analysis in *United States v. Stewart*, 536 F.3d 714 (7th Cir. 2008)(referred to in the government's brief as Stewart I and Stewart II) Stewart II is inappropriate because it relies on the government's burden of presumption being "overcome . . . by a change in time, place, and circumstances from the first statement to the second," (citation

---

[1] The government should be mindful that even though the Supreme Court "did not achieve a majority opinion regarding how future sequential interrogations should be evaluated" *Seibert* is still the law of the land and does not permit this two-step, (or three-step for that matter), non-*Miranda* drip-drip interrogation. [C.f., Gov't Rsp. at 20]

4

omitted) "such that a reasonable person in the suspect's situation would understand the import and effect of the Miranda warning." (Gov't Rsp at 20, citing, *Seibert*)(Internal quotations omitted). However, the government's "multifactor test" provides the Court with little or no guidance, other than asking the agents themselves whether they intentionally employed a two-step interrogation process or was it merely the result of asking questions about evidence, as it turned up, regardless of how incriminating it was. [Id.] Under this spongy analysis, basically everything counts and nothing counts. We argue that the government's analysis fails to explain how LEOs overcome their burden of proving they "did not deliberately withhold the [*Miranda*] warnings until after they had an initial inculpatory statement in hand." [Id. at 21]

Here, by their own admission, non-custodial Terry-type questioning began shortly after 4:00 p.m. and continued through 5:25 p.m. when one of the LEO's thought it might be a good idea to issue some type of "reminder" as to the "serious nature of the investigation and the importance of providing truthful answers." [Id. at 5] But only after agents had found evidence of a separate crime, with the un-*Mirandized* Felicia Brinson being questioned throughout.

Then at 5:25 p.m., one of the LEOs determines that it might be important to "remind" Felicia Brinson of the seriousness or importance of her answers in response to the LEOs questions in her apartment that day. We respectfully submit that this "reminder" does not in and of itself provide sufficient substitute for her *Miranda* warnings. And being taken to the FBI offices some 16 minutes later and several miles away, does not, as the government claim, cleanse the

5

government's constitutional obligation of reading her *Miranda* rights, much less overcome their burden of persuasion by a preponderance of the evidence.

      WHEREFORE the reasons stated above, the defendant through her counsel pray this Honorable Court grant her motion to suppress her statements and quash the arrest.

      Respectfully submitted,

      s/ Gerardo S. Gutierrez, Esq.

GERARDO S. GUTIERREZ, ESQ.
Attorney for Ms. Felicia Brinson
53 W. Jackson Blvd., Ste. 1651
Chicago, IL 60604
312-786-9970