IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| *Plaintiff,* | ) ) ) |
| v. | ) No. 18 CR 496 ) |
| FELICIA BRINSON | ) Judge Virginia M. Kendall ) |
| *Defendant.* | ) ) ) |

**MEMORANDUM OPINION AND ORDER**

Defendant Felicia Brinson is charged with possession of a controlled substance with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A). Defendant was arrested after federal law enforcement officers executed a search warrant on her residence as part of their investigation into an armed robbery. Defendant was interviewed by agents at her residence before being arrested and taken to an FBI office for further questioning. The question before the Court is limited to whether Defendant was in custody, and consequently subject to *Miranda* protections, while she was interviewed at her residence or, in the alternative, whether her statements were coerced or otherwise involuntary. For the reasons stated within, Defendant's Motion to Suppress is denied.

## BACKGROUND

At the evidentiary hearing on May 8, 2019, the government presented the testimony of Special Agent James Stover and Special Agent Dustin Gourley of the FBI.[1]

On August 10, 2018, Special Agent Stover and his team executed a search warrant on a residence at 4244 West Cermak in Chicago, Illinois. The warrant stemmed from an investigation into an armed robbery. At the time of the search warrant, authorities identified Ivan Parker, whom they believed resided at the Cermak apartment, as a suspect in the robbery. Members of Special Agent Stover's team began surveillance of the residence at approximately 7:00 a.m. on August 10, 2018. Authorities executed the search warrant at approximately 3:50 p.m. the same day. Agents knocked on the apartment door and announced they had a search warrant, to which Defendant opened the door. Accordingly, agents did not use any force to gain entrance into the residence. Agents Stover and Gourley testified that they could not recall whether they had their guns drawn upon entering the apartment, but if they did, it was only momentarily, and they would have been holstered the moment the room was cleared.

After the agents cleared the apartment and confirmed that Ivan Parker was not there, Agent Stover gave Defendant the opportunity to change and put on

---

[1] Neither party ordered an official transcript of the evidentiary hearing and therefore one has not been prepared. The Court has reviewed an unofficial transcript, but due to the lack of an official transcript, formal citations to hearing testimony are not available.

additional clothing—an invitation which Defendant declined. Agent Stover informed Defendant that the agents were there to execute a search warrant and that she was not under arrest. Defendant confirmed to Agent Stover that she lived in the residence. He asked Defendant whether she would be willing to speak with him and Defendant agreed. Agent Stover began interviewing Defendant just after 4:00 p.m. Throughout the interview, Defendant sat on her living room couch, while Agent Stover stood approximately two to three feet away. Defendant was not constantly monitored during the search and at times, Agent Stover stepped outside to have conversations with other agents. The interview was conducted in a conversational tone and Agent Stover had his firearm holstered throughout the duration of the interview. Defendant was not placed in handcuffs, was not physically restrained in any way, was able to use the restroom, and was asked if she needed anything to drink. During Agent Stover's interview of Defendant, Defendant did not ask to leave, did not attempt to leave the apartment, did not ask for food or water, and was allowed to smoke her own cigarette. Agent Stover testified that Defendant was polite, calm, and cooperative during the interview and did not appear to be under the influence of any substances. Similarly, Agent Gourley did not smell any odor on Defendant and noted that Defendant did not appear confused. While other agents were present in the residence, most of the search-related activity was focused in the bedroom and bathroom areas and not in the living room where Defendant was seated.

During the interview, Defendant was asked questions by agents regarding items that were recovered during their search of the residence. About twenty minutes

into the interview, agents asked Defendant about narcotics and a firearm that were recovered in another part of the residence. In response, Defendant claimed that both the firearm and the narcotics were hers, explaining that the narcotics were marijuana and crack cocaine. Defendant stated that she purchased the crack cocaine from an individual named Francisco, who she previously worked with, and that the firearm was from a childhood friend, Maurice Griffin. During the search, agents also recovered pepper spray and lottery tickets, among other items. Defendant was specifically asked about the pepper spray because pepper spray was used during the commission of the armed robbery that was being investigated. Defendant also consented to a search of her phone prior to her arrest.

    Towards the end of the interview, Agent Stover stepped outside and spoke to another agent working the investigation. That agent had spoken with the United States Attorney's Office which was considering charging Defendant in relation to the uncovered evidence due to her claim of ownership over both the narcotics and firearm. Upon returning to his interview of Defendant, Agent Stover informed Defendant of the serious nature of the investigation and advised her that it was important to be truthful. Agent Stover made this statement in an attempt to give Defendant an opportunity to correct her previous inculpatory statement. Even at this point of the interview, Agent Stover believed that Defendant would have been free to leave at any time. Agent Stover again asked whether Defendant was the owner of the firearm and drugs found in the residence. Defendant repeated that she was. At this point, Defendant was placed under arrest.

**DISCUSSION**

Defendant's suppression challenge is focused solely on the statements made during the time between the execution of the search warrant and the time she was arrested. Particularly, Defendant argues that the FBI agents executing the search warrant engaged in an impermissible two-step interrogation process to avoid their obligations under *Miranda*. In response, the government asserts that Defendant was not in custody and therefore was not subject to the protections of *Miranda*. Further, the government posits that any statements Defendant made were voluntary and not the result of coercive behavior by the agents.

**I. Defendant was not in custody during the execution of the search warrant**

"Under *Miranda,* a suspect interrogated by law enforcement officers while in custody must be notified of his constitutional rights to counsel and against self-incrimination." *United States v. Thompson,* 496 F.3d 807, 810 (7th Cir. 2007). However, as a necessary precursor to *Miranda*'s applicability, the individual must be in custody *and* subject to interrogation. *Id.* (quoting *United States v. Barker,* 467 F.3d 625, 628 (7th Cir. 2007)). Determining whether an individual is in custody is an objective inquiry, which considers the totality of the circumstances and asks whether "a reasonable person would have felt that he or she was not at liberty to terminate the interrogation and leave." *United States v. Borostowski,* 775 F.3d 851, 859 (7th Cir. 2014) (citing *Howes v. Fields,* 565 U.S. 499, 509 (2012)). "Relevant factors include the location of the questioning, its duration, statements made during the interrogation, the presence or absence of physical restraints during the questioning,

and the release of the interviewee at the end of questioning." *Id.* (internal citations omitted); *see also United States v. Salyers,* 160 F.3d 1152, 1159 (7th Cir. 1998) ("Custody implies a situation in which the suspect knows he is speaking with a government agent and does not feel free to end the conversation; the essential element of a custodial interrogation is coercion.") (internal quotations omitted). Purely voluntary statements to law enforcement officers are not subject to *Miranda* protections. *United States v. Sutton,* 77 F.App'x 892, 895 (7th Cir. 2003) (citing *United States v. Westbrook,* 125 F.3d 996, 1002 (7th Cir. 1997)).

Here, Defendant was not in custody during the interview prior to her arrest as a reasonable person under the circumstances would have realized she was free to leave. A litany of factors identified at the evidentiary hearing weigh in favor of finding that Defendant was not in custody. First, Defendant was informed at the outset of the encounter that she was not under arrest and she personally agreed to speak with Agent Stover. *See Sutton,* 77 F.App'x at 895. While the encounter did not occur in a public place, Defendant was within the confines of her own home and seated on her living room couch. When an individual's encounter with law enforcement occurs in familiar surroundings, "[t]hat fact generally weighs in favor of finding that [defendant] was not in custody." *Borostowski,* 775 F.3d at 862. In conducting the interview, Agents Stover and Gourley stayed at a conversational distance from Defendant and engaged her in a conversational tone throughout. Even if it could be said that the Agents stood closely to Defendant, "the close proximity of the agents alone … is insufficient to render a suspect 'in custody.'" *Thompson,* 496 F.3d at 811.

Both agents' guns were holstered throughout the interview and the mere presence of an agents' weapon is insufficient to establish custody. To the contrary, "[t]hat the agents did not draw or actively use their weapons to assert authority over [defendant] weighs against custody." *United States v. Patterson,* 826 F.3d 450, 457 (7th Cir. 2016). Defendant was not in handcuffs or physically restrained in any other way. *See Thompson,* 496 F.3d at 811 (affirming the denial of a motion to suppress where "the agents did not raise their voices or display their weapons in an intimidating manner, nor did they physically restrain Thompson in any way."). She was also given the opportunity to change clothes, have something to drink, use the restroom, and smoke her own cigarette.

The Agents credibly testified that Defendant exhibited a calm and cooperative tone during the encounter and at no time did she ask to leave. Though several agents were on the team that executed the search warrant, most of those agents were located in other portions of the residence during the interview such that Defendant was not subjected to the intimidating and imposing presence of multiple FBI agents watching her every move. Indeed, Defendant was left alone in her living room when, at times, Agent Stover would step outside to attend to other matters. Finally, the duration of the interview, approximately one and a half hours, is not impermissibly intrusive especially, whereas here, Defendant immediately claimed ownership of the narcotics and firearm upon the first instance she was questioned and not as the result of a grueling and drawn out interrogation. *See United States v. Ross,* 510 F.3d 702, 710 (7th Cir. 2007) ("The entire interview lasted five hours but Ross's confession came

within ten to fifteen minutes after inspectors initiated questioning; so he cannot argue he was worn down before he confessed.").

Separately, the mere fact that Defendant was present in the apartment while agents executed the search warrant does not necessarily lead to a finding that she was in detention. *Miranda* protections are simply not implicated in the normal course of executing a search warrant because the individual has not suffered a restraint on their ability to move. *United States v. Burns,* 37 F.3d 276, 281 (7th Cir. 1994). As detailed above, the circumstances of Defendant's interactions with law enforcement officers did not amount to custodial interrogation and the fact that a team of FBI agents was executing a search warrant in Defendant's residence does not mandate a different outcome. Based on the testimony presented at the evidentiary hearing, Defendant was free to decline to answer the agents' questions or leave the interview at any point up until her arrest. Therefore, it cannot be said that Defendant was in custody. *United States v. Higgins-Vogt,* 911 F.3d 814, 820 (7th Cir. 2018) ("An individual free to end the interrogation and leave is not in custody.").

Because Defendant was not in custody, and therefore not subject to the protections of *Miranda,* her primary argument that the agents engaged in an impermissible two-step interrogation must fail. Statements made to officers that are the result of a "two-step" interrogation technique deliberately used to undermine *Miranda* requirements must be suppressed. *United States v. Heron,* 564 F.3d 879, 883 (7th Cir. 2009) (citing *Missouri v. Seibert,* 542 U.S. 600, 622 (2004)). However, concerns regarding law enforcement officers' use of a two-step process to circumvent

*Miranda* only come in to play when an individual is in custody. *Thompson,* 496 F.3d at 811 ("In light of our finding that Thompson was not 'in custody' during the first interview…the contention that his [second] confession was the result of an impermissible, two-step interrogation process designed to circumvent and undermine *Miranda,* also fails."). Even if it could be said that Defendant was in custody at the time she was interviewed at her apartment, both Agents Stover and Gourley credibly testified to the cooperative nature of the interaction and there was no testimony to suggest that either employed a deliberate tactic to skirt Defendant's *Miranda* protections. Accordingly, concerns regarding the impermissible two-step interrogation tactic are squarely not a consideration in this matter.

**II. Defendant's statements were voluntary**

Defendant also presents a nebulous argument that her statements were somehow otherwise not entirely voluntary. The challenge is two-fold. First, that she was intoxicated such that she could not voluntary and intelligently consent to the apartment interview. And second, that the interviewing agents otherwise used coercive tactics to draw out incriminating statements. A confession is deemed voluntary "if, under all the circumstances, it is the 'product of a rational intellect and free will and not the result of physical abuse, psychological intimidation, or deceptive interrogation tactics that have overcome the defendant's free will.'" *United States v. Lee,* 618 F.3d 667, 676 (7th Cir. 2010) (quoting *United States v. Carson,* 582 F.3d 827, 833 (7th Cir. 2009)). "Among the factors relevant in determining whether a confession was coerced are: the defendant's age, intelligence, education, mental state;

whether he was given his *Miranda* rights; the duration and environment of the interrogation, including the suspect's access to the restroom and food during the interrogation; and the conduct of law enforcement." *Ross,* 510 F.3d at 709-10. Importantly, "a suspect's physical pain or drug use does not make a confession involuntary as a matter of law." *United States v. Walker,* 272 F.3d 407, 412-14 (7th Cir. 2001) (holding that defendant's statements were voluntary even while he was in heroin withdrawal because officers and witnesses testified that defendant was coherent and alert). Standing alone, intoxication is not sufficient to establish a statement was involuntary. Rather, an individual's intoxication is only relevant to the extent that it made the law enforcement coercion more effective. *See United States v. Toro,* 359 F.3d 879, 885 (7th Cir. 2004).

For much the same reasons as those listed in support of the Court's holding above that Defendant was not in custody, Defendant similarly was not coerced and her statements to federal agents were voluntary. There is no evidence in the record supporting the allegation that any of the agents executing the search warrant or interviewing Defendant at her apartment engaged in coercive or intimidating behavior. Instead, the Court was presented with the credible testimony of Agents Stover and Gourley that the entire interview was conducted in a conversational tone with no semblance of physical restraint used on Defendant in the familiar confines of her own home. Such circumstances cannot be considered coercive activity warranting the suppression of Defendant's statements. Similarly, Defendant's unsupported contention in her Motion to Suppress that she was "in a state of intoxication or drug

induced regression" is not sufficient to overcome evidence presented at the evidentiary hearing. (Dkt. 49, ¶ 4). Agents Stover and Gourley unequivocally testified that Defendant was responsive, coherent, and cooperative throughout the entire interaction. Even if the Court were to accept Defendant's contention that she was intoxicated, this fact in isolation does not lead to the suppression of her statements in the absence of any evidence of coercion. *Toro,* 359 F.3d at 885.

## CONCLUSION

For the reasons outlined above, Defendant's Motion to Suppress is denied. Defendant's statements made to the interviewing agents were voluntary and she was not in custody at the time they were made.

Date: July 1, 2019

_____
Virginia M. Kendall
United States District Judge